UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLOCKWORK PH3, LLC,

    Plaintiff,

v.                                             Case No.:  2:23-cv-407-SPC-KCD

CLEAR BLUE SPECIALTY
INSURANCE COMPANY,

    Defendant.
_____/

# **ORDER**

Before the Court is Plaintiff Clockwork PH3 LLC's Amended Motion to Compel Appraisal (Doc. 21), and Defendant Clear Blue Specialty Insurance Company's Response in Opposition (Doc. 22).[1] Because the parties dispute whether Plaintiff has satisfied the post-loss conditions needed to order appraisal, the Court held an evidentiary hearing. *See Treasure Cay Condo. Ass'n, Inc. v. Frontline Ins. Unlimited Co.*, No. 0:19-CV-10211-JLK, 2020 WL 13687543, at *4 (S.D. Fla. July 21, 2020) ("[W]hen an insurer reasonably disputes whether an insured has sufficiently complied with a policy's post-loss conditions so as to trigger the policy's appraisal provision, a question of fact is created that must be resolved by the trial court before the trial court may

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

compel appraisal."). Having reviewed the evidence and post-hearing briefs (Docs. 57, 59), the Court now grants Plaintiff's motion.

## I. Background

Plaintiff owns an apartment complex in Desoto County that has "eight (8) separate buildings with a total of fifty (50) individual apartment units." (Doc. 21 at 1.) Following Hurricane Ian, Plaintiff submitted an insurance claim to its property insurer, Clear Blue. Clear Blue assigned the claim to an adjuster and began its investigation.

Clear Blue's first correspondence with Plaintiff was a reservation of rights letter. (Def. Ex. 2.)[2] In it, Clear Blue advised Plaintiff that "damages suffered by [you] from this loss may not be covered" based on several policy provisions. (*Id.* at 4.) Clear Blue also made clear that no determination had been made on the claim, and the letter should not be "construed either as an admission or coverage or waiver of any applicable coverage defenses." (*Id.*)

Around this same time, Plaintiff retained a public adjuster—Daniel Hogan. (Pl. Ex. 4.) Mr. Hogan set about inspecting the property and communicating with Clear Blue about the claim. (Hr'g Tr. 67:4-19.) He produced an estimate that attributed $1,559,623.52 in damage to the storm.

---

[2] Many exhibits submitted are not consecutively paginated. For consistency purposes, the Court will cite to all exhibits with the page numbers from its electronic filing system.

(Pl. Ex. 6 at 348.) The report was sent to Clear Blue along with pictures of the damaged property. (Hr'g Tr. 76:24-77:17.)

Mr. Hogan was not the only person to inspect the property. Clear Blue sent its own consultant and estimator—Michael Bente. (Hr'g Tr. 133:9-18.) Mr. Bente visited the property at least once. And he too prepared an estimate. (Pl. Ex. 9.) Although Mr. Bente also found damage to each of the apartment buildings, he disagreed about the overall amount. (*Id.* at 169.) His estimate totaled $220,267.42. (*Id.*) An engineer also inspected the property for Clear Blue.

As Plaintiff's claim made its way through the adjustment process, Clear Blue sent several letters seeking additional information. The first came on January 6, 2023. (Def. Ex. 3.) Clear Blue asked for:

1. A updated version of the Public Adjuster Estimate that reflects the scope of repairs that was observed during the site inspection with the Swyfft Engineer.
2. Any invoices from the company we observed working on the property units during the site inspection, including their progress to date and intended completion date.
3. Moisture mapping data and status of initiation or completion of this data. If it was completed then a copy of the findings and the invoice is requested.
4. The original estimate includes mitigation equipment. Please provide an invoice from the licensed company that undertook this work. Includes all the customary information for projects of this type including, progress photos, personnel counts, equipment counts, type, drying logs, locations, drying standards and goals, biocide application, etc.

3

> 5. Updated license for the Assessor Jay Widman, Department of Business and Professional Regulation show it is as expired.
>
> 6. Additionally, there is also a roof repair estimate from Jose Galvan for Building F. Please provide Jose's Florida License. It was unable to be located on the invoice or on the Department of Business & Professional Regulation website.

(*Id.* at 1-2 (errors in original.) Over several emails, Mr. Hogan supplied documents responsive to these requests. (Hr'g Tr. 74:13-77:23.) He also advised Clear Blue that his estimate had not changed. (Pl. Ex. 7.)

Clear Blue sent a second letter in February. It asked for:

> 1. Any and all maintenance work performed for the last 3 years.
>
> 2. Copy of Flood Insurance Policy.
>
> 3. Claim number and claim contact information for the flood Carrier.
>
> 4. Any and all mitigation documentation related to the flood damages.
>
> 5. Any and all estimates from contractors or appraisers for the damages related to flood for the last 3 years.
>
> 6. Invoices from the company observed replacing the flooring in the interior of the units during the site inspection, including their progress to date and intended completion date.
>
> 7. The original estimate includes mitigation equipment. Please provide an invoice from the licensed company that undertook this work. Includes all the customary information for projects of this type including, progress photos, personnel counts, equipment counts, type, drying logs, locations, drying standards and goals, biocide application, etc.
>
> 8. Moisture mapping data and status of initiation or completion of this data from the water mitigation professional. If it was completed then a copy of the findings and the invoice is requested.

4

9. The roof repair estimate from Jose Galvan for Building F.
10. All documentation and data from the Mold Inspectors of Florida related to the interior units.

(Def. Ex. 4.)

Fast forward several months and Clear Blue sent a final letter to Plaintiff. (Def. Ex. 5.) It again asked for the ten categories of documents identified above. (*Id.* at 2-3.) It also advised Plaintiff that the claim was "partially denie[d]." (*Id.* at 2.) Clear Blue determined that seven of the buildings did not sustain "a covered loss" based on its engineering report. (*Id.* at 8.) These damages were instead attributed to non-covered events—"long term exposure to water, continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, wear and tear/deterioration, mechanical damage, lack of regular maintenance, poor workmanship and or improper installation of the exterior building items including but not limited to the buildings the building roofs, the building flooring surface, building crawlspace, the exterior stucco system, the buildings interiors, and the building windows and doors." (*Id.* at 4.) For the one building Clear Blue agreed to cover, it assessed $32,704.30 in damages. (*Id.*)

Plaintiff responded to the claim denial by suing and demanding appraisal. (Doc. 1.) The parties' insurance policy provides for an appraisal

5

process when there is disagreement over the amount of a loss. The policy states:

> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Doc. 21 at 2.)

The policy also imposes certain post-loss duties on Plaintiff. Pertinent here:

> **3. Duties In The Event Of Loss Or Damage**
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> \* \* \*
>
> (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>
> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
>
> \* \* \*
>
> (8) Cooperate with us in the investigation or settlement of the claim.

(Doc. 22 at 8-9.)[3]

Clear Blue has acknowledged there is a covered loss, it has made some payment to Plaintiff, and it has conducted at least one inspection of the property. Still, Clear Blue argues appraisal is premature because "Plaintiff did not comply with the post-loss conditions of the policy." (Doc. 57 at 7.) Clear Blue specifically takes aim at Plaintiff's failure to "provide all requested documents" and "cooperate with the investigation and settlement of the subject claim." (*Id.*)

## II. Discussion

When an insurance policy contains an appraisal provision, as here, the right to appraisal is not permissive but mandatory. So once a demand for appraisal is made, "neither party has the right to deny that demand." *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. Dist. Ct. App. 1994). "[W]hen the insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal." *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. Dist. Ct. App. 2014)

But before a court can compel appraisal, it must make a preliminary determination about whether the demand is ripe. *Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:22-CV-47-SPC-NPM, 2023 WL 2743148, at *2 (M.D. Fla. Mar.

---

[3] The policy contains several other post-loss conditions, but Clear Blue has limited its argument to these three. (Hr'g Tr. 7:6-9:11.)

7

31, 2023). Appraisal "is ripe where post-loss conditions are met, and the insurer has had a reasonable opportunity to investigate and adjust the claim and there is a disagreement regarding the value of the property or the amount of loss." *Heritage Prop. & Cas. Ins. Co. v. Williams*, 338 So. 3d 1119, 1121 (Fla. Dist. Ct. App. 2022). Until post-loss "conditions are met and the insurer has a reasonable opportunity to investigate and adjust the claim, there is no 'disagreement' (for purposes of the appraisal provision in the policy) regarding the value of the property or the amount of loss." *State Farm Fla. Ins. Co. v. Cardelles*, 159 So. 3d 239, 241 (Fla. Dist. Ct. App. 2015).

Everyone agrees that Plaintiff had to comply with the policy's post-loss conditions before demanding appraisal. (*See* Docs. 57, 59.) But there is a dispute about what level of compliance was required. According to Clear Blue, full and complete satisfaction of post-loss conditions is needed. (Doc. 57 at 6.) Put in the context of this dispute, Clear Blue says Plaintiff needed to provide every document it requested. And Plaintiff's failure to disclose even a single paper means appraisal is unavailable. (*See* Hr'g Tr. 167:17-168:1.) Plaintiff, meanwhile, argues that substantial compliance is the standard: "only a meaningful exchange sufficient to establish disagreement regarding the amount of the loss . . . is the rule." (Doc. 59 at 7.)

The law is admittedly unclear on this issue. Some cases speak of complete compliance. *See, e.g.*, *Mexicali Border Cafe, Inc. v. AmGUARD Ins.*

8

*Co.*, No. 8:21-CV-28-WFJ-CPT, 2022 WL 671570, at *6 (M.D. Fla. Mar. 7, 2022) ("In the context of compelling appraisal, substantial compliance is not enough. Only full compliance with all post-loss obligations can trigger appraisal."). Others have seemingly set a lower bar. *See, e.g., Triton Renovation, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-432-JLB-NPM, 2021 WL 2291363, at *5 (M.D. Fla. June 4, 2021) ("Florida's courts, at least in some circumstances, have constructively conditioned an insured's right to invoke appraisal on substantial compliance with the policy's post-loss duties."); *Am. Coastal Ins. Co. v. Villas of Suntree Homeowner's Ass'n, Inc.*, 346 So. 3d 126, 129 (Fla. Dist. Ct. App. 2022) ("The trial court was presented with competent substantial evidence that would support a finding that [the insured] had sufficiently documented its claim in accordance with the insurance policy to permit the appraisal to be sufficiently ripe to go forward.").

This Court has previously endorsed a substantial compliance standard. *See Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-547-FtM-38NPM, 2020 WL 9160865, at *3 (M.D. Fla. Sept. 30, 2020); *Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:22-cv-47-SPC-NPM, 2023 WL 2743148, at *3 (M.D. Fla. Mar. 31, 2023). This makes sense considering appraisal is conditioned on the receipt of adequate information to determine the loss, not complete or perfect information. *See Scottsdale Ins. Co. v. Univ. at 107th Ave., Inc.*, 827 So. 2d 1016 (Fla. Dist. Ct. App. 2002) ("[T]he nature of the post-loss

9

obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured."). It also better aligns with the Court's role at this stage—to make a "preliminary determination" about whether a demand for appraisal is ripe. *Citizens Prop. Ins. Corp. v. Admiralty House, Inc.*, 66 So. 3d 342, 344 (Fla. Dist. Ct. App. 2011).

Clear Blue's proffered approach, meanwhile, would encourage absurd results. If absolute compliance is the standard, an insurer could easily elude appraisal by making onerous demands until the insured failed to deliver in some minuscule way. Post-loss conditions are meant to provide insurers with a "shield" from being disadvantaged during the appraisal process, not a "sword" to be used against insureds. *Parkview Point Condo. Ass'n Inc. v. QBE Ins. Corp.*, No. 10-23731-CV, 2011 WL 13099890, at *7 (S.D. Fla. Sept. 9, 2011). Appraisal is ultimately meant to streamline insurance disputes, not foster a game of gotcha. *Breakwater Commons Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-Ccv-31-JLB-NPM, 2021 WL 1214888, at *2 (M.D. Fla. Mar. 31, 2021) ("Given the overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means . . . for which the parties have themselves contracted, resort to the appraisal process is strongly preferred.").

No matter what standard is appropriate, the Court ultimately comes to the same result here. Clear Blue's chief argument is that Plaintiff breached

10

the policy by withholding documents it requested. Even if true (which is far from clear on the record presented), Plaintiff has since remedied any default. The parties exchanged thousands of documents in discovery. (Hr'g 36:14-17 (noting the "bankers boxes" of discovery material brought to the hearing).) Clear Blue has not identified a single document that was requested pre-suit but remains undisclosed.[4] If an insured provides whatever the insurer might have wanted "post-loss and pre-suit" during the suit, such as through discovery, then a trial court commits no error when it orders the insurer to "submit to an appraisal." *Scottsdale Ins. Co.*, 827 So. 2d at 1017. Because the record provides that Plaintiff remedied any deficiency through discovery, "this Court may order appraisal." *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468-SPC-MRM, 2021 WL 4438370, at *5 (M.D. Fla. Sept. 28, 2021).

Although Clear Blue largely focuses on the documents requested in the claims process, it also argues Plaintiff breached its obligation "to cooperate . . . in the investigation or settlement of the claim." (Doc. 57 at 8.) On this point,

---

[4] Clear Blue has identified three categories of documents that allegedly remain outstanding, even with discovery: (1) invoices for work identified on Plaintiff's daily logs; (2) mold inspection and mapping records for a specific unit; and (3) credit card receipts. (Doc. 57 at 8; Hr'g Tr. 162:19-164:7.) Starting with the final category, Clear Blue never requested credit card receipts. So Plaintiff's failure to provide them cannot be a breach of the policy. As for the work-log invoices, the only testimony was that all such documents had been disclosed. (Hr'g Tr. 25:20-26:6.) Finally, Plaintiff says it provided the mold inspection and mapping records in its possession. (*Id.* at 32:3-9, 74:21-23.) And no evidence rebuts that claim. (*Id.* at 160:14-161:5.)

11

Clear Blue faults Plaintiff for failing to create certain invoices it wanted. (*Id.*) This argument fails for a simple reason—nowhere does the policy require Plaintiff to affirmatively create documents on Clear Blue's demand. *See Heritage Prop. & Cas. Ins. Co. v. Condo. Ass'n of Gateway House Apts. Inc.*, 344 So. 3d 52, 55 (Fla. Dist. Ct. App. 2021) (analyzing a similar insurance policy and noting "the insured [was] contractually obligated to allow the inspection and copying of its existing books and records [and nothing] more"). The Court declines to condition Plaintiff's cooperation on conduct not required under the policy. *See Certain Underwriters at Lloyd's v. Lago Grande 5-D Condo. Ass'n, Inc.*, 337 So. 3d 1277, 1280-81 (Fla. Dist. Ct. App. 2022) ("In matters of appraisal, the contract language controls."). And regardless, Plaintiff's various disclosures and efforts during the claims process were sufficient cooperation to satisfy this policy condition. *See Sunshine State Ins. Co. v. Corridori*, 28 So. 3d 129, 131 (Fla. Dist. Ct. App. 2010) ("[W]here the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented regarding the necessity or sufficiency of compliance.").

As mentioned, the task at this point is to make a preliminary determination about whether appraisal is ripe. Clear Blue has admitted there is a covered loss and acquired a wealth of information about Plaintiff's claim, including thousands of documents and hours of deposition testimony. Because

Plaintiff has also complied with the post-loss conditions in dispute, appraisal is appropriate. *See Triton Renovation, Inc.*, , 2021 WL 2291363, at *5.

One final issue. If appraisal is ordered, Clear Blue asks that "it be limited to only the one (1) building to which" coverage has been extended. (Doc. 57 at 9.) This is appropriate, according to Clear Blue, because "coverage for each of the other seven (7) buildings was wholly denied." (*Id.*)

The Court is not persuaded. "In matters of appraisal, the contract language controls." *Lago Grande 5-D Condo. Ass'n, Inc.*, 337 So. 3d at 1280. The insurance policy here does not treat Plaintiff's property as discrete subparts or buildings. Coverage is instead afforded to the property as a whole. (*See* Pl. Ex. 1 at 23.) Nor does the policy provide a mechanism to divide the appraisal process. Plaintiff is entitled to seek appraisal whenever there is a covered loss in dispute. The language contains no other limits or conditions, and it would be improper for this Court to redraft the policy to restrict the appraisal process even if it seems appropriate or fair. *See Citizens Prop. Ins. Corp. v. Zunjic*, 126 So. 3d 355, 356 (Fla. Dist. Ct. App. 2013) ("What is appraised and whether a party can be compelled to appraisal depend on the contract provisions.").

Clear Blue cites several cases where appraisal was limited in the fashion it requests. (Doc. 57 at 10-11 (citing *Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506-KMM, 2016 WL 471949, at *3 (S.D. Fla. Feb. 8, 2016) and *Landings At*

*Victoria Isles Ass'n, Inc. v. Everest Nat'l Ins. Co.*, No. 4D21-1737, 2022 WL 321223 (Fla. Dist. Ct. App. Feb. 3, 2022).) But that result flowed from the fact "that each building was separately listed on the policy's declarations page, with separate coverage and premiums amounts assigned to each, rather than an aggregate value for all." *Pernas*, 2016 WL 471949, at *3. Thus, each building was "effectively covered by separate insurance contracts, meaning that the amount recoverable for a loss affecting one property must be determined independently of any loss affecting the other." *Id.* Those are not the facts here. Plaintiff's policy does not differentiate between the various buildings on the property. There is therefore no basis for the Court to conclude that the loss affecting each building must be independently assessed.

Clear Blue seems to suggest that without limiting appraisal it will be forced to pay for the seven buildings where it attributed the damages to an uncovered peril. Not so. "The appraisers determine the amount of the loss, which includes calculating the cost of repair or replacement of property damaged, *and ascertaining how much of the damage was caused by a covered peril as opposed to things such as normal wear and tear, dry rot, or various other designated, excluded causes.*" *Citizens Prop. Ins. Corp. v. River Manor Condo. Ass'n, Inc.*, 125 So. 3d 846, 854 (Fla. Dist. Ct. App. 2013) (emphasis added). When an "insurer has not wholly denied coverage but the parties dispute whether the claimed damage resulted from a covered or uncovered

14

cause," as here, "appraisal is appropriate." *Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 50 (Fla. Dist. Ct. App. 2021).

Accordingly, it is **ORDERED**:

1. Plaintiff's Amended Motion to Compel Appraisal (Doc. 21) is **GRANTED**.

2. The Hurricane Ian Scheduling Order contemplates a stay if appraisal is ordered. (Doc. 5 at 2.) Thus, the case is **STAYED** pending appraisal, and the Clerk must add a stay flag to the file and **ADMISTRATIVELY CLOSE THE CASE**. All deadlines and events in the Hurricane Ian Scheduling Order (Doc. 5) are suspended.

3. The parties are **DIRECTED** to file a joint report on the status of appraisal on or before **December 26, 2023**, and every 90 days after until appraisal has ended.

4. Within 15 days of a signed appraisal award, the parties are **DIRECTED** to jointly notify the Court of (a) what issues, if any, remain for the Court to resolve; (b) whether the stay needs to be lifted; and (c) how this action should proceed, if at all.

15

**ENTERED** in Fort Myers, Florida on September 26, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

16